## Ursula O'Brien and Frederick W. O'Brien
### v.
## Comstock Foods, Inc.

[ 212 A.2d 69 ]

June Term, 1965

Present: **Holden, C. J., Shangraw, Barney and Smith, J. J. and O'Brien, Supr. J.**

Opinion Filed July 7, 1965

*Robert M. Rosenberg, Jr.* and *Lisman & Lisman* for plaintiffs.

*Black, Wilson and Hoff* for defendant.

**Holden, C. J.** The plaintiff Ursula O'Brien presents two complaints for personal injuries which she claims were caused by eating a piece of glass, contained in a can of string beans packed by the defendant. Her first complaint is founded on an alleged breach of warranty; the second charges negligence in the packing of the product. Her husband seeks redress for similar injuries and he, too, resorts to actions in contract and tort to recover his damage.

The cases were previously here for determination of jurisdictional questions. *O'Brien* v. *Comstock Foods, Inc.* 123 Vt. 461, 194 A.2d 568. Upon remand the plaintiffs were allowed to amend to supply additional jurisdictional facts. The amended complaints were challenged by the defense of want of privity of contract. Sustaining the defendant's contention on this point, the Chittenden County Court ordered all of the causes dismissed and certified the question for review by this Court.

The pleadings disclose that the defendant prepared, packed and hermetically sealed a can of cut stringless green beans. The product was sold to the International Grocers Alliance for resale and distribution to grocers in Vermont and elsewhere within its established marketing area. The can was purchased by the husband from a grocer in Burlington, Vermont.

These facts compose the question certified. They call upon us to decide, for the first time, whether privity of contract is essential to the maintenance of an action against a food processor for injuries caused by a defect in the product as originally packaged.

The need for privity in an action for negligent bottling, was left unattended in *Joly* v. *Coca Cola Co.*, 115 Vt. 174, 55 A.2d 181. In any event, the fallacy of the privity requirement in actions for negligent manufacture was exposed and substantially laid to rest in Judge Cardozo's landmark decision in *MacPherson* v. *Buick Motor Company*, 217 N. Y. 382, 111 N.E. 1050, L.R.A. 1916F 696, 701.

An enterprise engaged in the process and packing of foods, like the manufacturer of automobiles, extends an invitation to purchase and use its product to indeterminate members of the consuming public. "It was responsible for the finished product. It was not at liberty to put the finished product on the market without subjecting the component parts to ordinary and reasonable tests." And that responsibility was not lessened nor discharged because the injured person happened to be outside the reach of the contract that marketed the product. *MacPherson* v. *Buick Motor Co.*, supra, L.R.A. 1916F 700.

■ The persuasive effect of the logic of the MacPherson decision has been accepted by authorities too abundant to catalog and to the point where, but for two doubtful exceptions, no American jurisdiction refuses to apply it. Prosser, The Assault Upon The Citadel (Strict Liability To The Consumer) 69 Yale L.J. 1099, 1100. We join in this acceptance and hold it was error to dismiss the complaints founded on negligence for want of privity.

Is the defendant protected from its warranties because it did not deal with the injured consumers by direct sale? The warranty upon which the plaintiffs rely was not made by negotiation and bargain. Such was the situation in *Piper* v. *Oakland Motor Co.*, 94 Vt. 211, 212, 109 Atl. 911, which failed for want of authority of the agent to make the warranty relied upon.

The warranties upon which the plaintiffs depend are imposed by law from the nature of the transaction and the circumstances of the parties, apart from considerations entirely contractual. Jaeger, Product Liability: The Constructive Warranty, 39 Notre Dame Law 501, 506. And Williston points out that while a warranty may be based on contract, it is not necessarily so. 5 Williston, Contracts § 1505 (Rev. Ed.).

The privity requirement, in actions sounding in tort, apparently originated in *Winterbottum* v. *Wright*, 10 M. & W. 109, 114, 152 Eng. Rep. 402, 403 (1842). Then, Lord Abinger predicted "absurd and outrageous consequences" if privity was not demanded. But the requirement was eroded, if not abandoned, in *Heaver* v. *Pender*, 11 Q. B. 503 (1883). And the erosive process has been constant, and sometimes severe. *Ultramares Corp.* v. *Touche*, 255 N. Y. 170, 180, 174 N. E. 441, 445; *Henningsen* v. *Bloomfield Motors*, 32 N.J. 358, 161 A.2d 69, 75 A.L.R. 2d 1, 36; 2 Harper & James, The Law of Torts § 28.16; Jaeger, Privity of Warranty: Has The Tocsin Sounded? 1 Duquesne L.R. 1; Prosser, The Assault Upon The Citadel, supra; for extensive collection of cases, see annotation, 75 A.L.R. 2d 43.

Since ancient times, the purveyors of food and drink have been held to special responsibilities. As early as the thirteenth century dealers in food products and beverages were subjected to criminal penalties for trafficking in "corrupt" commodities. Civil liability in the common law followed the same pattern. According to Blackstone, "in contracts for provisions it is always implied that they are wholesome . . ." 1 Street, Foundations of Legal Liability p. 387; Williston, Sales § 241 (Rev. Ed.) ; see also, *Bragg* v. *Morrill*, 49 Vt. 45, 47.

The invitation of the manufacturer or originator of the product,

referred to some fifty years ago in the *MacPherson* case, supra, has become more extensive and persuasive by way of modern packaging and advertising techniques. "Today when so much of our food is bought in packages it is not just or sensible to confine the warranty's protection to the individual buyer. At least as far as food and household goods, the presumption should be that the purchase was made for all the members of the family." *Greenberg* v. *Lorenz,* 9 N.Y. 2d 195, 173 N.E. 2d 773, 776 (Desmond, C. J. 1961). In that instance the right of a child to recover for personal injuries, inflicted by a defective can of salmon, was not defeated because she did not participate in the purchase. The difficulty which faced the Court of Appeals was not in finding the applicable rule, for the requirement of privity in earlier decisions was clear. The problem was whether or not to change it. Since the rule was one of judicial origin, and the New York statutes were silent on the subject, the restriction was abandoned, as the New Jersey Supreme Court had done the year before. *Henningsen* v. *Bloomfield Motors,* supra, 75 A.L.R. 2d at 38.

The illogic and injustice of applying the rule of privity to the immediate buyer has equivalent effect when applied to restrict liability to the immediate seller. The inducement of the sale, in modern economic society, generally comes from the producer of the food product. The middlemen in the chain of distribution, are, for the most part silent so far as the consumer is concerned. *Randy Knitwear Inc.* v. *American Cyanamid Co.,* 11 N.Y. 2d 5, 181 N.E. 2d 399, 181 N.E. 399, 402 (1962); *Goldberg* v. *Kollman Instrument Corp.,* 12 N.Y. 2d 432, 191 N.E. 2d 81, 83 (1963); see also *Greenman* v. *Yuba Power Products, Inc.* 59 Cal. 2d 67, 377 P.2d 897 (1963).

For the same reasons of logic and fairness, Connecticut, has overruled earlier decisions founded on the doctrine of caveat emptor and requirements of privity. The Court held that a manufacturer or producer who markets his product in a sealed container impliedly warrants to the ultimate consumer that the product is reasonably fit for the purpose intended and that it does not contain any harmful or deleterious substance of which due and ample warning has not been given. Where the product fails to conform to that undertaking, and an ultimate consumer sustains injury from that source, the lack of privity furnishes no bar to his action against the manufacturer. *Hamon* v. *Digliani,* 148 Conn. 710, 174 A.2d 294, 297 (1961).

We are not restrained by any precedent in this jurisdiction where the requirement of privity has been applied to products liability. We must find the applicable law as it has developed and grown in other

jurisdictions. These sources summon us to hold that whether the food producer's undertaking is referred to as a duty or an implied warranty is of little consequence. His responsibility to the injured consumer is the same. Once causation is established, want of privity will not relieve the legal obligation.

The reversal of the order dismissing the actions, which must follow, cannot be avoided, as the defendant urges, because the plaintiffs have resorted to multiple actions, on different theories. The points sought to be raised are dilatory in substance and were not involved in the ruling certified to this Court. In any event, since the revised statutory rules of procedure, there is but one form of action. 12 V.S.A. § 971. No action is to be defeated for nonjoinder or misjoinder of parties or causes of action. 12 V.S.A. § 1071. If the actions should be consolidated for trial, as the plaintiffs agree, that object can be accomplished at the trial level under the direction of the court.

The defendant also contends that affirmance should be entered because the plaintiff wife testified in a pre-trial deposition that she did not know, of her own knowledge, some of the jurisdictional facts alleged in her amended complaint. When the cause is finally tried on the merits, proof of facts necessary to sustain the court's jurisdiction will not be restricted to the plaintiff's personal knowledge. Of necessity, proof must be marshalled from other sources acquainted with the defendant's commercial activity in Vermont. *O'Brien* v. *Comstock Foods, Inc.* supra, 123 Vt. at 465. Whether the allegations can be sustained by substantial evidence is a question that must await the actual trial. The issue cannot be concluded by one of the plaintiff's inadequate knowledge of such facts as demonstrated by her deposition taken before trial.

*Order dismissing the actions is reversed and causes remanded.*