### Janusz T. Ostrowski v. Hydra-Tool Corporation

[479 A.2d 126]

No. 82-453

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed April 6, 1984

Motion for Reargument Denied July 20, 1984

306

*Allan R. Keyes* of *Ryan Smith & Carbine, Ltd.*, Rutland, and *Kissell & Massucco*, Bellows Falls, for Plaintiff-Appellant.

*J. Fred Carbine, Jr.*, and *Leonard J. Gluck* (On the Brief), Rutland, for Defendant-Appellee.

**Peck, J.** Plaintiff appeals from an order by the Windham Superior Court dismissing his suit for failure to state a cause of action. V.R.C.P. 12(b)(6). We affirm.

The facts discussed herein are as alleged in plaintiff's complaint and are taken as true for purposes of deciding the merits

of the appeal. *Bennett Estate* v. *Travelers Insurance Co.*, 138 Vt. 189, 190–91, 413 A.2d 1208, 1209 (1980).

On November 12, 1980, plaintiff suffered an amputation of three fingers and other injuries to his hands while operating a press-brake machine in the course of his employment. The original corporate manufacturer of the machine had long since been dissolved at the time of plaintiff's injuries. Defendant Hydra-Tool Corporation is the second of two succeeding purchasers of the manufacturer's assets, and continues to manufacture similar press-brake machines.

Plaintiff sought to recover damages for his injuries under the doctrines of strict products liability, breach of warranty, and negligence based on a failure to warn. As to the first two counts, plaintiff urged that they be applied under the "product-line" theory or, as an alternative, the "continuity of enterprise" approach to successor liability. Plaintiff's negligence count alleged a duty to warn of the machine's defects on the part of Hydra-Tool, independent of its status as a successor corporation. The superior court dismissed all three counts.

### Successor Liability

The general and traditional rules of corporate successor liability are grounded in corporate law and turn on the form of the change in the corporate entity. The essence of the rules is that the liabilities of a predecessor corporation will pass to the successor only when the change is occasioned by statutory merger or consolidation. 1 L. Frumer & M. Friedman, Products Liability § 5.06[2] (1983). If the change is accomplished by a sale of assets only, the purchasing corporation assumes no liabilities of the seller unless one of the following exceptions applies: (1) the buyer expressly or impliedly agrees to assume such liabilities; (2) the transaction amounts to a de facto merger or consolidation; (3) the purchasing corporation is merely a continuation of the selling corporation; (4) the sale is a fraudulent transaction intended to avoid debts and liabilities; (5) inadequate consideration was given for the sale. *Id.*

Under the product-line theory urged by plaintiff here and in the court below, a successor corporation which continues to manufacture a product of the business it acquires, regardless of the method of acquisition or any possible attribution of

fault, assumes strict liability for products manufactured and sold before the change of corporate ownerships. See, e.g., *Ramirez* v. *Amsted Industries, Inc.*, 86 N.J. 332, 347–48, 431 A.2d 811, 819 (1981).

Broadly stated, the rationale of these decisions, as well as the continuity of enterprise theory, appears to turn on a balancing of economic considerations: perceived benefits to the successor resulting from acquisition, and the assumption that the successor is better able to bear the cost of harm regardless of fault, than the injured person. The postulate seems to be that these costs can always be passed on to consumers in the form of price increases.

■   We agree with the position taken by the lower court that these theories do not speak the law of this state, and we decline to adopt them. In our view, the arguments in support of the general rule are more persuasive: the successor corporation did not create the risk or receive any benefit from the proceeds of the sale; it did not invite or solicit its use or make any representations as to its safety; it is in no position to enhance the safety of a product already on the market, and finally, we view the theories urged by plaintiff as a potential economic threat to small businesses. See, e.g., *Bernard* v. *Kee Manufacturing Co.*, 409 So. 2d 1047 (Fla. 1982). Accordingly, we hold that the general and more traditional rule, including the exceptions described above, is the law in this state, and the court properly dismissed the first two counts.

## *Independent Duty To Warn*

■   In Vermont, a manufacturer's duty to warn of known product defects "arises when the product manufactured is dangerous to an extent beyond that which would be contemplated by the ordinary purchaser, *i.e.*, a consumer possessing the ordinary and common knowledge of the community as to the product's characteristics." *Menard* v. *Newhall*, 135 Vt. 53, 55, 373 A.2d 505, 507 (1977). Because the privity requirement in negligence actions has been eliminated, *O'Brien* v. *Comstock Foods, Inc.*, 125 Vt. 158, 160, 212 A.2d 69, 70 (1965), the holding of *Menard, supra,* should not be limited to "purchasers" but extended to employees of purchasers as well.

Nevertheless, plaintiff here has a further hurdle to clear before establishing a prima facie case in negligence. The manufacturer in *Menard, supra,* was the original maker of the allegedly defective product. However, in the case at bar, the specter of corporate succession appears once again.

Succession to a predecessor's service contracts, coverage of the particular machine under a service contract, service of that machine by the purchaser corporation, a purchaser corporation's knowledge of defects and of the location or owner of that machine, are factors which may be considered in determining the presence of a nexus or relationship effective to create a duty to warn.

*Travis* v. *Harris Corp.,* 565 F.2d 443, 449 (7th Cir. 1977), *quoted in Gee* v. *Tenneco, Inc.,* 615 F.2d 857, 866 (9th Cir. 1980).

Unfortunately, plaintiff's complaint does not contain sufficient factual allegations to satisfy this test. The complaint was therefore properly dismissed as to this count also.

*Affirmed.*