Sheila FARNHAM, Guardian of Gerald Farnham v. BOMBARDIER, INC.

[640 A.2d 47]

No. 93-037

February 1, 1994. Plaintiff Sheila Farnham appeals from the grant of summary judgment in favor of defendant Bombardier, Inc., in her products liability action. We affirm.

Plaintiff is the guardian of Gerald Farnham, who was injured in an accident that occurred during a snowmobile race between five snowmobilers on a runway about thirty feet wide at a private airstrip in Washington, Vermont. Defendant is the manufacturer of a Ski-doo Formula MX snowmobile ridden by another racer, John Kinnarney. The snowmobiles reached speeds in excess of 60 m.p.h. Plaintiff alleged that Kinnarney's snowmobile flipped over and struck Gerald Farnham when both racers' vehicles were caught in a whiteout and Kinnarney braked his snowmobile in an attempt to slow down. There were no witnesses to the actual moment of injury, but Gerald Farnham was found unconscious beside the track with a small wound in the back of his head. The helmet he had been wearing was on the ground some distance away. He remains comatose.

Plaintiff claimed strict liability, among other things, alleging that the snowmobile ridden by Kinnarney contained design defects that rendered it unstable when braking at high speeds within its designed speed range. The court granted defendant's motion for summary judgment because of a lack of evidence of a design defect, without reaching Bombardier's defenses of assumption of the risk and superseding cause.

Reviewing a grant of summary judgment, we apply the same standard as the trial court, namely, that the motion should be granted when, taking all allegations made by the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Garneau v. Curtis & Bedell, Inc.*, 158 Vt. 363, 366, 610 A.2d 132, 133 (1992). Summary judgment is appropriate if, after adequate time for discovery, a plaintiff is unable to make a sufficient showing to establish the existence of an element essential to her case, and on which she has the burden of proof at trial. *Poplaski v. Lamphere*, 152 Vt. 251, 254–55, 565 A.2d 1326, 1329 (1989).

To establish strict liability in a products liability action, a plaintiff must show that the defendant's product (1) is defective; (2) is unreasonably dangerous to the consumer in normal use; (3) reached the consumer without undergoing any substantial change in condition; and (4) caused injury to the consumer because of its defective design. Restatement (Second) of Torts § 402A (1965); see *Zaleskie v. Joyce*, 133 Vt. 150, 154–55, 333 A.2d 110, 113–14 (1975) (adopting § 402A "strict product liability" in this jurisdiction). It is plaintiff's burden to show a defective condition. Restatement, *supra*, § 402A comment g. A product is defective if it is not "safe for normal handling and consumption." *Id.* comment h. Further, "unreasonably dangerous" means the product is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id.* comment i.

Plaintiff contends that defendant did not raise the issue of product defect in its motion for summary judgment; therefore, plaintiff had no burden to present evidence on defect. Defendant's motion, however, plainly stated that the snowmobile was not defective, albeit without isolating that statement under a special heading: "Plaintiff alleges in her Complaint that the snowmobile manufactured by Bombardier is defective in that it becomes unstable and may go out of control at high speeds. . . . [T]here was nothing wrong with Bombardier's product." Plaintiff cites *John Deere Co. v. American Nat'l Bank*, 809 F.2d 1190 (5th Cir. 1987), which held that "a district court may not grant summary judgment *sua sponte* on grounds not requested by the moving party." *Id.* at 1192. In this case, however, defendant responded to plaintiff's allegation that the snowmobile was defective, and thus there was no sua sponte action by the court. See Black's Law Dictionary 1277 (5th ed. 1979) (defining "sua sponte" as "voluntarily, without prompting or suggestion").

In ruling against plaintiff on the element of design defect, the trial court examined the deposition testimony of plaintiff's expert, engineer Stanley J. Klein. Klein testified both to the inherent instability of the machine at high speeds and to its inadequate braking system for safe stops at high speeds. The court concluded that speeds in excess of 60 m.p.h. were not normal use and held that the expert testimony was insufficient to establish a product defect because nowhere had Klein stated that the Ski-doo was unreasonably dangerous in normal use.

On appeal, plaintiff argues that although the expert may not have uttered the "magic words," "unreasonably dangerous in normal use," the substance of his testimony was more than sufficient to show product

defect. Plaintiff also argues that "normal use" includes foreseeable misuse. See *Vickers v. Chiles Drilling Co.*, 822 F.2d 535, 538 (5th Cir. 1987) (normal use of product includes all reasonably foreseeable uses, including foreseeable misuse). Plaintiff points to defendant's own testimony that the Ski-doo ridden by Kinnarney was capable of travelling over 60 m.p.h.

We do not address these arguments at length because we agree with the trial court's conclusion that the expert's assertions in this case, which are all plaintiff put forward during two years of discovery, are insufficient evidence of a product defect. Moreover, this case is different from *Vickers*. There, the manufacturer of a large air compressor built a stairway for access and egress from the top of the unit, but the stairway was not visible and plaintiff jumped off the top of the compressor, injuring himself. The court held that since the stairway was not visible, the manufacturer should have foreseen the misuse that occasioned plaintiff's injuries. *Id.* at 539.

The facts of this case are more like those in *Menard v. Newhall*, where a seven-year-old boy was blinded in a BB-gun fight. We held that the gun was not unreasonably dangerous because the fact "that a BB gun, if fired at a person, could injure an eye, is nothing that even a seven-year-old child does not already know." 135 Vt. 53, 56, 373 A.2d 505, 507 (1977). Here, as in *Menard*, the consequences were terrible. But the dangers of racing snowmobiles five abreast on a narrow strip of land at high speeds are manifestly within the common knowledge of the ordinary consumer. There is no evidence that the snowmobile was unreasonably dangerous under these circumstances even if it behaved as plaintiff alleges. See *Elliott v.*

*Brunswick Corp.*, 903 F.2d 1505, 1507 (11th Cir. 1990) (where plaintiff injured when she jumped into water next to pleasure boat, boat's unguarded propeller not dangerous beyond expectation of ordinary consumer because "consumer clearly understands that a revolving propeller involves danger"); *Hylton v. John Deere Co.*, 802 F.2d 1011, 1015 (8th Cir. 1986) (where danger of climbing into bin of combine was open and obvious, design of combine not dangerous beyond contemplation of ordinary consumer).

*Affirmed.*